UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| FIORAVANTE SETTEMBRE | ) | CASE NO. 05-61271 |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| _____ | ) | |
| FIDELITY & GUARANTY LIFE INSURANCE | ) | |
| COMPANY and LIFE EVENT ADVANTAGE | ) | |
| DIVISION OF LIFE INSURANCE COMPANY | ) | |
| OF THE SOUTHWEST and NATIONAL LIFE | ) | |
| INSURANCE COMPANY | ) | |
| Plaintiffs. | ) | |
| vs. | ) | A.P. No. 06-3133 |
| FIORAVANTE SETTEMBRE | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM**

This proceeding comes before the Court on the Plaintiffs' Renewed Motion for Summary Judgment. The Defendant opposed the summary judgment motion. Upon consideration of the motion, the response filed thereto, and the record in this case, the Court concludes that there is no genuine issue of material fact and that the Plaintiffs are entitled to judgment as a matter of law.

**I.    STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §1409(a).

**II.    SUMMARY JUDGMENT STANDARD**

The Court can render summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056(c). Summary judgment is appropriate when the record taken as a whole, and viewed in the light most favorable to the nonmoving party, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First

Nat'l Bank v. Cities Service Co., 391 U.S. 253, 289 (1968)).

Once the moving party has made a proper motion for summary judgment, the nonmoving party may not rely upon mere allegations to rebut the motion, but instead must set forth specific facts demonstrating that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e). The nonmoving party must produce more than a "mere scintilla" of evidence to support its claim, once a properly supported motion for summary judgment has been made.

## III.    FACTS

In June 2000, the Defendant, a sophisticated businessman, incorporated an entity named Insbanc, becoming a 50% shareholder and its Chief Executive Officer. Insbanc marketed and sold life insurance products. On August 1, 2001, the Defendant, Eric Anderson and Insbanc borrowed $500,000 from Life Event for operating capital. On July 2, 2003, they borrowed $200,000 from F&G also for operating capital. Insbanc, on March 31, 2005, filed for Chapter 11 bankruptcy relief. On October 14, 2005, Eric Anderson filed for Chapter 7 relief and the next day, October 15, 2005, the Defendant also filed for Chapter 7 relief.

During the course of the bankruptcy proceeding, the Plaintiffs moved for a Rule 2004 examination of the Defendant and sought a production of documents in connection with that motion. The Plaintiffs were attempting to reconstruct the Defendant's financial affairs during the period of time of Insbanc's existence. The Court granted the Plaintiffs' motion and ordered the Defendant to produce the following documents:

> (1) To the extent not previously produced, all state and federal tax returns, schedules, and all related documents necessary to the completion of returns, including but not limited to W-2 forms, and schedules for the years 2000, 2001, 2002, 2003, 2004, and 2005;
>
> (2) All employment contracts, contracts for wages, contracts for commissions, or any other contract or agreement for compensation between Mr. Settembre and any person or entity which could have

>potentially generated compensation to Mr. Settembre in the years 2000, 2001, 2002, 2003, 2004, and 2005. Should any such agreement not exist in writing, a detailed description of the agreement. Additionally, a description of Mr. Settembre's job history for the same years, including but not limited to job titles and responsibilities as well as a description of all personal investments Mr. Settembre may have made in any such entities.
>
>(3) To the extent not previously produced, all bank statements, check registers and cancelled checks (including endorsements on same), whether kept in electronic or paper form, for all bank accounts held in the name (either jointly or singly) of Fioravante Settembre or Fiore Settembre or the Settembre Group for the years 2000, 2001, 2002, 2003, 2004, and 2005.
>
>(4) To the extent not previously produced, all life insurance policies on which Mr. Settembre is the insured life and all documents related thereto including copies of all checks or other remittances of premium payments for each such policy, including but not limited to policies held with Old Line Life, Vantis Life, and AIG.
>
>(5) The general ledger detail, receipts, disbursement registers, accountant workpapers and tax returns for The Settembre Group for the years 2000, 2001, 2002, 2003, 2004, and 2005.
>
>(6) All monthly statements for all trusts, investment, brokerage and or other income-generating accounts held in the name of Fioravante Settembre or Fiore Settembre for the years 2000, 2001, 2002, 2003, 2004, and 2005.

The Defendant did not completely comply with this order and on July 17, 2006, the Plaintiffs initiated this adversary proceeding seeking to deny the Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4), and 727(a)(6). On September 18, 2006, the Plaintiffs filed their first motion for summary judgment seeking denial of the Defendant's discharge under § 727(a)(3), which provides for discharge denial when a debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." In order to provide the Defendant with even more time to produce

the requested documents, the Court remanded the summary judgment motion, and ordered the Defendant to produce the financial records no later than October 31, 2006.

On November 16, 2006, the Plaintiffs filed the Renewed Motion for Summary Judgment currently before the Court. In the motion, the Plaintiffs allege the Defendant failed to produce a tax return for the year 2000, failed to produce signed tax returns for the years 2001 through 2004, failed to produce his employment contract with Insbanc, failed to produce any check registers, and failed to produce copies of all cancelled checks. The Plaintiffs further allege the Defendant could not or would not account for the source of all deposits made into his personal/ business checking account in the name of "The Settembre Group," or to account for the disposition of many checks, some substantial in amount, made payable to himself.

The Defendant opposed the Renewed Motion for Summary Judgment arguing that he provided the Plaintiffs sufficient documentation in order for them to ascertain his financial condition and business transactions. He explains that he lost or misplaced many of his financial records during a move and that he should be allowed to testify to defend his document retention and business practices.

## IV.  LEGAL DISCUSSION

Section 727(a)(3) provides for a denial of discharge when a debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). This section "requires the debtor to provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." Turoczy Bonding Co. v. Strbac (In re Strbac), 235 B.R. 880,

882 (6th Cir. BAP 1999) (quoting In re Martin, 141 B.R. 986, 995 (Bankr. N.D. Il. 1992)).  In order to succeed on a § 727(a)(3) action, a plaintiff need not prove fraudulent intent on the part of the debtor.  The law simply provides that the debtor, as a condition precedent to discharge, produce sufficient financial records or give adequate reasons for his failure to do so. In re Gentile, 123 F. Supp. 723, 726 (W.D. Ky. 1954).  The burden on the debtor is greater when, as here, the debtor is a sophisticated person.  A "sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records should be." McCord v. Sethi (In re Sethi), 250 B.R. 831, 839 (Bankr. E.D. NY 2000).

"The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records." Wazeter v. Michigan Nat'l Bank (In re Wazeter), 209 B.R. 222, 227 (W.D.Mich.1997) (citations omitted); Barclays/Am. Business Credit Inc. v. Adams (In re Adams), 31 F.3d 389, 394 (6th Cir.1994), cert. denied, 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995).  However, "[o]nce a debtor's records are determined to be inadequate, the burden is on the debtor to establish any justification therefor." United States v. Trogdon (In re Trogdon), 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990).

It is clear to the Court that the Defendant is a sophisticated person, and that he should be able to adequately produce his financial documents for the period of time in question.  The law does not require impeccable bookkeeping or extravagant accounting measures, but it does require at least a fundamental undertaking to maintain proper records.  Here, the records are simply inadequate.  The Defendant could not produce tax records for the year 2000 and could not provide signed copies of his tax records for the years 2001 through 2004.  He could not produce check registers or copies of all cancelled checks.  Furthermore, when the Defendant chose to intermingle his personal and

business checking accounts, he was required to maintain adequate records in order to determine which transactions were business in nature and which were personal in nature. Because of the Defendant's failure to keep, or produce sufficient financial records, he left no trail as to the nature of many of the transactions that occurred during this period of time. Moreover, by not keeping adequate records regarding the deposits into his general checking accounts, it is impossible to determine if the funds deposited originated with Insbanc or some other source. The Plaintiffs, as creditors of Insbanc and the Defendant, should be able to adequately trace the funds they advanced. Here, due to the Defendant's failure to keep or preserve sufficient records, this is simply not possible.

It is clear from the record recited earlier that the Court has provided the Defendant with ample time to locate and produce the requested financial records. It is equally clear that the Defendant cannot account for these records. Thus, the question turns to whether the Defendant has a sufficient justification for not maintaining his financial records. The Defendant contends he has sufficient justification in that the documents were lost during a move. The Court finds this excuse patently insufficient. In re Buzzelli, 246 B.R. 75, 102-104 (Bankr. W.D. Pa. 2000), accord In re Sethi, 250 B.R. at 840 (noting that debtor failed to show records "were destroyed or lost due to some event beyond his control, such as fire or theft"). Ultimately, the Defendant bears the responsibility to insure the preservation of financial documents during a move. As the Defendant failed to meet his responsibility, his discharge must be denied. The Court shall enter an Order this same date in accordance with the holding of this Memorandum.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| FIORAVANTE SETTEMBRE | ) | CASE NO. 05-61271 |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| _____ | ) | |
| FIDELITY & GUARANTY LIFE INSURANCE | ) | |
| COMPANY and LIFE EVENT ADVANTAGE | ) | |
| DIVISION OF LIFE INSURANCE COMPANY | ) | |
| OF THE SOUTHWEST and NATIONAL LIFE | ) | |
| INSURANCE COMPANY | ) | |
| Plaintiffs. | ) | |
| vs. | ) | A.P. No. 06-3133 |
| FIORAVANTE SETTEMBRE | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER**

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

**IT IS ORDERED** the Plaintiffs' Renewed Motion for Summary Judgment is **GRANTED**.